In re Charter Pines Hospital, Inc. v. N. C. Dept. of Human Resources

IN THE MATTER OF: CHARTER PINES HOSPITAL, INC., A NORTH CAROLINA COR-
PORATION, PETITIONER-APPELLANT v. NORTH CAROLINA DEPARTMENT OF
HUMAN RESOURCES, RESPONDENT-APPELLEE, PITT COUNTY MEMORIAL
HOSPITAL, INC., INTERVENOR, AND COMMUNITY HOSPITAL OF ROCKY
MOUNT, INTERVENOR

No. 8510SC1081

(Filed 4 November 1986)

**1. Hospitals § 2.1— proposed psychiatric hospital—certificate of need—letters of
support properly required**

Respondent's request for additional information, including its request that
petitioner provide letters of support from various health care professionals and
service groups for a proposed psychiatric hospital, did not amount to the
establishment of a *criterion* for review of petitioner's *application* for a certifi-
cate of need and was therefore neither unlawful nor improper.

**2. Hospitals § 2.1— proposed psychiatric hospital—certificate of need—evidence
of support—notice of support requirement**

There was no merit to petitioner's contention that respondent erred by
excluding critical evidence on the issue of support for a proposed psychiatric
hospital and by failing to give petitioner proper notice of the support require-
ment, since all of the excluded evidence would have been relevant only upon
the issue of whether respondent's request for letters of support was an action
taken upon unlawful procedure or was in excess of respondent's authority,
neither of which was the case; the excluded evidence was outside the scope of
permissible subject matter at a contested case hearing as defined in applicable
regulations; and petitioner received adequate and particular notice of respond-
ent's need for additional evidence on the issue of support through a notice of
incompleteness from the health planner in the certificate of need section of re-
spondent.

**3. Hospitals § 2.1— proposed psychiatric hospital—lack of support from health
care community**

Substantial evidence existed in the record as a whole to support respond-
ent's findings and conclusions that petitioner's proposal to construct a
psychiatric and substance abuse hospital lacked the necessary support from
the health care community where there was no evidence of support from local
mental health centers, substance abuse facilities, courts, local hospitals, or
medical education facilities—entities from whom expressions of support were
specifically requested in respondent's notice of incompleteness and whose sup-
port, according to respondent, was crucial to the success of such a project;
there was substantial evidence of active opposition to the proposal from key
health care facilities and professionals in the area, including letters of opposi-
tion from several doctors listed on petitioner's application as supporters of the
proposal; and though respondent ultimately did receive some documentation of
support for petitioner's proposal, it was not representative of all the counties
petitioner proposed to serve.

**4. Hospitals § 2.1— proposed psychiatric hospital—no approval of fewer beds than proposed—no error**

Respondent did not abuse its discretion by failing to approve a certificate of need for seven fewer beds than petitioner requested in its application, since petitioner presented no evidence in its application or at the contested case hearing which indicated a willingness to accept a certificate of need for fewer beds than those proposed; and petitioner's proposal was for a *minimum* number of beds which would "allow the facility to achieve the necessary economies of scale that will result in both improved patient care, financial viability and cost control."

**5. Hospitals § 2.1— proposed psychiatric hospital—need for beds—application of methodology proper**

Use by respondent's health planner of the State Medical Facilities Plan methodology to compute psychiatric bed need in the subject health systems area and in petitioner's proposed service area was an issue specifically not reviewable at the contested case hearing, but application of the SMFP methodology to petitioner's proposal was reviewable; the hearing officer's findings and conclusions on the issue of bed need were supported by substantial evidence.

Judge WELLS concurring.

APPEAL by petitioner from *Bailey, Judge.* Judgment entered 26 June 1985 in WAKE County Superior Court. Heard in the Court of Appeals 7 April 1986.

In February 1983, petitioner Charter Pines Hospital, Inc. (Charter) made application, pursuant to G.S. 131-180 (1981), *repealed and recodified* at G.S. 131E-182 (Cum. Supp. 1985), to the North Carolina Department of Human Resources (DHR) for a certificate of need (CON) to construct a psychiatric and substance abuse hospital. Charter proposed a sixty-five (65) bed freestanding psychiatric hospital with twenty-one (21) beds designated for addictive disease treatment and forty-four (44) beds designated for psychiatric care. The project was to be located in Greenville, North Carolina, in Health Systems Area VI (HSA VI), a health planning area designated by the State Medical Facilities Plan (SMFP) encompassing twenty-nine (29) counties in eastern North Carolina. Charter's application was assigned for review to John C. Heffner, Health Planner, DHR CON Section.

Upon receipt of a CON application, CON regulations provide for a fifteen (15) day period within which the application is given a preliminary review for completeness. Additional material may be requested and received by the CON Section during that period. Applications are deemed incomplete if they contain insuffi-

cient information to conduct the CON review. 10 NCAC 3R .0305 (1983). On 18 February 1983, Heffner notified Charter that he deemed its CON application to be incomplete and he requested additional information.

On 24 February 1983, Charter furnished the additional information. Charter's application was deemed complete for review on 28 February 1983, and the CON Section thereafter began its review of the application on 1 March 1983.

The Project Review Committee of HSA VI recommended disapproval of Charter's application on 13 April 1983 and E.C.H.S.A. [Eastern Carolina Health Systems Agency], the federally created health planning body for HSA VI, recommended disapproval for the following reasons:

1. It is inconsistent with the philosophy, goals and objectives of the HSP [Health Systems Plan]. The philosophy of the HSP in regard to mental health services is that they be deinstitutionalized and provided throughout the area by community hospitals and community mental health centers. This application is specifically inconsistent with Goal #2, Objective #2 of the Adult Mental Health Section which calls for the development of short term psychiatric beds in local hospitals, especially in the Lenoir, Onslow, Roanoke-Chowan, Pitt and Albemarle catchment areas. This application proposes to take 63% of the psychiatric beds available to all of NC HSA VI and would preclude development in the *other* high priority areas. (Criteria #1)

2. There are alternative, less costly means of providing the proposed health service, specifically community hospitals. (Criteria #5)

3. The applicant does not have sufficient support from existing health and social service providers in the area to be served by the facility to assure necessary or appropriate referral, back-up and support services. (Criteria #8) (emphasis original)

On 13 June 1983, pursuant to 10 NCAC 3R .0309(c) (1983), Heffner again requested additional information from Charter, responses and answers to which were received on 28 June 1983. Based upon Heffner's review, and in consideration of the recom-

mendation of E.C.H.S.A., the CON Section subsequently determined that Charter's proposal "did not conform to applicable plans, standards, and criteria" and, by letter of 28 July 1983, notified Charter that its application was not approved. Charter thereafter requested, and was granted, a contested case hearing.

Pitt County Memorial Hospital, a hospital located in Greenville which currently provides psychiatric bed facilities and plans to expand its existing facilities, and Community Hospital of Rocky Mount, a hospital located in Rocky Mount with plans to construct psychiatric beds, were granted leave to intervene in the contested case hearing. After receiving voluminous evidence, the Hearing Officer issued a Proposal for Decision recommending disapproval of Charter's application, concluding that Charter's proposed project failed to conform with applicable criteria, standards and plans in the areas of adequate support from the health care community, bed need, and duplication of facilities and services. The proposed decision was adopted as the final decision of the Division of Facility Services, DHR, by I. O. Wilkerson, Director, on 24 August 1984.

Charter petitioned for judicial review of the decision in Wake County Superior Court pursuant to Chapter 150A of the General Statutes. Charter appeals from a judgment affirming the final agency decision.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Barbara P. Riley, for respondent appellee North Carolina Department of Human Resources.*

*Sanford, Adams, McCullough & Beard, by Heman R. Clark and Renee J. Montgomery; and King & Spalding, by Richard L. Shackelford, for petitioner appellant.*

*Hollowell & Silverstein, P.A., by Edward E. Hollowell and Robert L. Wilson, Jr.; and James T. Cheatham, P.A., by James T. Cheatham, for intervenor appellee Pitt County Memorial Hospital, Inc.*

*Poyner & Spruill, by J. Phil Carlton and Susan K. Nichols, for intervenor appellee Community Hospital of Rocky Mount.*

MARTIN, Judge.

The applicable standard of judicial review of a final decision of the Department of Human Resources with respect to an appli-

In re Charter Pines Hospital, Inc. v. N. C. Dept. of Human Resources

cation for a certificate of need was set out in G.S. 150A-51 (1983), *amended and recodified* at G.S. 150B-51 (1985) (effective 1 January 1986).

The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the agency findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Unsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

Charter assigns error to the findings, inferences, conclusions and decision of DHR concerning Charter's application for a certificate of need, contending that DHR's decision was in violation of constitutional and statutory provisions, grounded upon unlawful procedure, affected by error of law, unsupported by substantial evidence, and was arbitrary and capricious. Charter urges this court to reverse the judgment of the Superior Court which affirmed DHR's decision, and grant Charter a certificate of need. We disagree with Charter's contentions and, for the following reasons, affirm the decisions of the Superior Court and DHR.

The lengthy and detailed briefs submitted for our consideration by the parties and intervenors in this action focused our attention on three (3) primary questions presented by this appeal. (1) Whether DHR correctly applied the statutory criteria relating to community health care support for the Charter proposal; (2) Whether DHR correctly determined that Charter's proposal exceeded the psychiatric bed need within the applicable Health Service Area; and (3) Whether DHR's determination that Charter's proposal was nonconforming was arbitrary and capri-

cious. The governing CON law at the time of Charter's application, and therefore dispositive of the issues in this appeal, was G.S. 131-175 to -188 (1981), *amended and recodified* at G.S. 131E-175 to -191 (Cum. Supp. 1985), and the corresponding provisions of the North Carolina Administrative Code effective at that time. We will address Charter's assignments of error as they relate to these issues and the appropriate standards of review.

I

[1]   Charter first contends that DHR, through project analyst Heffner, improperly required Charter to provide letters of support as a part of its CON application. Charter argues that DHR acted upon unlawful procedure, exceeded its statutory authority, and denied Charter equal protection under the law by imposing the requirement for letters of support without first promulgating the requirement as a regulation. Charter further argues that DHR erred as a matter of law and denied Charter due process of law by excluding critical evidence on the issue of support and by failing to give Charter proper notice of the support requirement. Finally, Charter argues that DHR's findings and conclusions on the issue of support are not based on substantial evidence. We find no merit in Charter's contentions and overrule these assignments of error.

Charter first contends that DHR's request for letters of support (as specified in the notice of incompleteness forwarded to Charter on 18 February 1983) exceeded its statutory authority and was based upon unlawful procedure because the letters requirement was not specified in CON regulations promulgated by DHR pursuant to G.S. 131-181(a) (1981). Charter correctly argues that there is no requirement in any statute or department regulation or plan that letters of support must accompany a CON application, and that criteria to be used by DHR to review CON applications should be promulgated as regulations. G.S. 131-177(5) (1981). We hold, however, that DHR's request for additional information, including its request that Charter provide letters of support for the proposed hospital, did not amount to the establishment of a criterion for review of Charter's application, and was, therefore, neither unlawful nor improper.

The record is clear as to the circumstances leading to project analyst Heffner's request for letters of support from various

In re Charter Pines Hospital, Inc. v. N. C. Dept. of Human Resources

health-care professionals and service groups. Upon receipt of Charter's application, Heffner conducted a preliminary review to determine whether Charter had furnished sufficient information for the CON review. The application form submitted was provided to Charter by DHR pursuant to G.S. 131-180 (1981) and specifically requested the following information:

PLEASE LIST THE PHYSICIANS WHO HAVE EXPRESSED SUPPORT FOR THE PROPOSAL, BY SPECIALTY. HOW HAVE THESE INDIVIDUALS AND OTHER MEDICAL PERSONNEL CRUCIAL TO THE VIABILITY OF THE PROPOSAL BEEN INVOLVED IN THE PLANNING PHASE OF THE PROJECT? PLEASE INDICATE IF OTHER GROUPS/INDIVIDUALS, WHO COULD AFFECT THE PROJECT'S SUCCESS, HAVE EXPRESSED SUPPORT FOR IT.

Charter responded as follows:

From the earliest contacts made in the area up to the present, the physicians of the area, particularly the psychiatrists in private practice and those on the faculty of the ECU Medical School, have been included in the entire development process: assessment of need, program determination, and the like. Since the Charter Pines Hospital will have an open staff, these physicians will be the Medical Staff for the Charter Pines Hospital. This is why their involvement was solicited from the very beginning.

All of the following physicians have been involved to a greater or lesser degree in the initial planning and development efforts to establish Charter Pines Hospital. All of them will continue to be invited to participate in the development and eventual operations of Charter Pines Hospital once it is approved by the State.

| | |
|---|---|
| Jarrett Barnhill, M.D. | ECU Medical School Faculty |
| Jascha Danoff, M.D. | ECU Medical School Faculty |
| Ray Evan, M.D. | Private Psychiatrist |
| William Fore, M.D. | Past President, Pitt Co. Medical Soc. |
| Jerry Gregory, M.D. | ECU Medical School Faculty |
| William Laupus, M.D. | Dean, ECU Medical School |
| James Mathis, M.D. | ECU Medical School Faculty |
| Leslie Mega, M.D. | ECU Medical School Faculty |
| Barry Moore, M.D. | Private Psychiatrist |
| Philip Nelson, M.D. | Private Psychiatrist |

| | |
|---|---|
| Robert Nenno, M.D. | Pitt Co. Community Mental Health |
| Robert Ratcliffe, M.D. | Private Psychiatrist |
| Everett Simmons, M.D. | ECU Medical School Faculty |
| Jon Tinglestad, M.D. | ECU Medical School Faculty |
| William Walker, M.D. | ECU Medical School Faculty |
| Alfred Youngue, M.D. | Private Psychiatrist |
| Judith Yongue, M.D. | Private Psychiatrist |

All of the physicians above were invited to visit an operating Charter Medical hospital. Some of them did go to visit Charter Ridge Hospital, Lexington, Kentucky which was developed by Charter Medical Corporation in a joint effort with the University of Kentucky Medical School. It is anticipated that a similar close affiliation will be developed with the ECU Medical School once the facility is approved by the state.

Active involvement with the project development has been and is being solicited from the area's Community Mental Health Services, Substance Abuse Services, School Systems, Courts, mental health professionals as well as psychiatrists, Nursing Schools, and similar interested groups.

It is apparent that, although it listed a substantial number of names in response to the question on the application, Charter's response contained absolutely no indication that any of the listed professional groups and individuals from the primary and secondary service areas had ever expressed any support for the proposal. Heffner testified that, because he was unable to find any documentation for Charter's assertions of support, he deemed the application incomplete in that respect. Along with his requests for additional information relating to multiple other areas which had been inadequately addressed in the application, Heffner requested the following information:

Please provide letters of support. Letters should be provided from physicians, hospitals, community mental health services and substance abuse services providers, school systems, courts, as well as mental health professionals, nursing schools, and similar groups.

Charter contends that Heffner, by requesting letters of support, improperly created a new review criterion in violation of the Administrative Procedure Act (APA), CON law, and the Code of

Federal Regulations. Citing the case of *Comm'r of Insurance v. Rate Bureau,* 300 N.C. 381, 269 S.E. 2d 547, *reh'g denied,* 301 N.C. 107 (1980), Charter argues that Heffner acted upon unlawful procedure by establishing the letters of support requirement without DHR's having promulgated it as a regulation under the APA. In *Rate Bureau,* the Supreme Court held that although the Commissioner of Insurance had the statutory authority to require that data submitted in an insurance rate-making case be audited, he acted upon unlawful procedure by attempting to establish such a rule without properly promulgating it under the procedures of the APA.

In our view, the facts of the present case so distinguish it from *Rate Bureau* that the holdings in that case are not dispositive of the issues in this appeal. In *Rate Bureau,* the Commissioner of Insurance attempted to establish and apply the rule requiring that data be audited by finding and concluding that unaudited reports were unreliable and by denying rate increases based upon the failure of the applicants to comply with the Commissioner's unpromulgated rule. On the other hand, Mr. Heffner, by requesting that Charter provide letters of support, was not seeking to impose an administrative rule or requirement that such letters be submitted with a CON application. His request was not a rule at all. Rather, he was seeking, after reviewing the somewhat elusive response which Charter provided with respect to the relationship between its proposed facility and the existing health care delivery systems in the area, to obtain the information originally requested and to substantiate that support for the proposed facility actually existed. The hearing officer, therefore, concluded:

> 9. When the review process disclosed clear lack of support, or opposition, from some of the health care community, the Certificate of Need Section was required to seek to document or refute the application's unsupported assertions of compliance with the network, continuum of care, and other health community relationship criteria and standards; the lack of support (from Mental Health Centers, courts, drug programs, etc.) and evidence of opposition (from the local hospital, medical school, etc.) in the record compel the conclusion that the project application does not conform with applicable

criteria; the immediate or long-term success of the project is in doubt.

The specific issue of whether a request by DHR for letters evidencing support for a proposal imposes a requirement in excess of its statutory authority or amounts to an agency action based on unlawful procedure has not previously been addressed by appellate decision in North Carolina. However, our opinion in *Hospital Group of Western N.C. v. N.C. Dept. of Human Resources,* 76 N.C. App. 265, 332 S.E. 2d 748 (1985) is indicative that such letters may constitute evidence of the existence or non-existence of statutory factors determinative of need. *See* G.S. 131-181(3) (1981). In *Hospital Group,* DHR requested letters in support of petitioner's hospital from "physicians, community mental health centers, schools, churches, the court systems and other groups/individuals. . . ." *Hospital Group* at 269, 332 S.E. 2d at 752. Eight letters were received, none of which were from schools or courts, and all of the letters received were from only one county out of a twenty-nine (29) county area. Based on those letters, this court upheld DHR's determination that there was insufficient support for the proposed hospital.

We hold that Heffner's request for documentation of Charter's alleged support was entirely reasonable and within DHR's authority in order to obtain the necessary information to properly review the application. *See* 10 NCAC 3R .0309(c) (1983). This assignment of error is overruled.

[2]   Charter next contends that DHR erred as a matter of law and denied it due process of law by excluding critical evidence on the issue of support and by failing to give Charter proper notice of the support requirement. Again, we disagree.

Charter attempted to introduce: (1) evidence of other applications which were approved by the CON Section without the type or quantity of letters of support required of Charter; (2) evidence that the basis of Pitt County Memorial Hospital's opposition to Charter's proposal was not legitimate; (3) evidence that the expectation of letters of support is unrealistic and unnecessary; and (4) the "Draft Criteria and Standards for Short-Stay Alcohol and/or Drug Abuse Intensive Treatment Beds" showing that a requirement of letters of support had been deleted from those regulations before they were promulgated. This evidence would have

been relevant only upon the issue of whether Heffner's request for letters of support was an action taken upon unlawful procedure or was in excess of DHR's statutory authority. In view of our holding that Heffner's request for letters was within Heffner's statutory authority and was procedurally permissible, we can conceive of no possible prejudice occasioned to Charter by the exclusion of such evidence. We note also that the excluded evidence was outside the scope of permissible subject matter at a contested case hearing as defined in 10 NCAC 3R .0408(c) (1983) and 10 NCAC 3R .0420 (1983). Additionally, Charter received adequate and particular notice of DHR's need for additional evidence on the issue of support through Heffner's notice of incompleteness. These assignments of error are overruled.

[3]   Charter further contends that DHR's findings and conclusions on the issue of support are "unsupported by substantial evidence . . . in view of the entire record as submitted." G.S. 150A-51(5) (1983). The applicable standard of review, prescribed by the foregoing statute, is the whole record test. Under the whole record test, the reviewing court must consider all the evidence to determine whether the agency's decision is supported by substantial evidence. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comm'r of Insurance v. Rating Bureau*, 292 N.C. 70, 80, 231 S.E. 2d 882, 888 (1977). In determining the substantiality of the evidence, the court must consider all the evidence, including that which contradicts the agency's decision. The court may not substitute its judgment for that of the agency "even though the court could justifiably have reached a different result had the matter been before it *de novo*." *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977). A proper application of the whole record test takes into account the expertise of an administrative agency. *High Rock Lake Assoc. v. Environmental Management Comm.*, 51 N.C. App. 275, 276 S.E. 2d 472 (1981).

After review and consideration of the record as a whole, we acknowledge that it contains considerable evidence from which, if this case were before us *de novo*, we might justify a different result. Under the whole record test, however, we must determine only whether DHR's decision has a rational basis in the evidence presented. *In re Rogers*, 297 N.C. 48, 253 S.E. 2d 912 (1979). We find that it does.

In his proposal for decision, adopted by DHR as its Decision and Order, the hearing officer made, among others, the following findings of fact on the issue of support.

(34) The response to the incomplete notice provided no letters of support from any hospital, community mental health service, substance abuse services provider, court, or nursing school, and there was no other documentation to corroborate the application's indications of support or assistance from these organizations.

(35) The response did provide one letter of support from a physician, three from schools, and several from mental health professionals.

(36) In denying the Charter Pines application, the Certificate of Need Section specifically found that the project lacked the necessary support from the health care community and thereby was Non-Conforming with Review Criteria (a)(5), (a)(6), (a)(7), (a)(21), and special criteria in 10 NCAC 3R .2505(b) and .2506.

(37) At hearing the proponents produced a great volume of petitions and other documents and extensive testimony showing local support from some health professionals and parts of the business community, and they produced evidence of support from some psychiatrists and some schools, but except for the unsubstantiated assertions of employees of Charter Medical Corporation that support would be developed after construction of the project, there was still no evidence of support from local mental health centers, substance abuse service providers, courts or court personnel, local hospitals, or medical education facilities.

The hearing officer subsequently made, among others, the following conclusions.

12. This project was denied, not for lack of letters, but for lack of support; there is no requirement that proponents produce *letters* of support, but where allegations of support are questioned and contradicted in the review process, unless support or other positive indications of the questioned health community participation are demonstrated by letters, other

documents, independent testimony, or similar reliable evidence, the proponents' project must be found Non-Conforming.

13. The Charter Pines project is Non-Conforming with Review Criteria (a)(1), (a)(5), (a)(6), (a)(7), and (a)(21), and with special criteria .2504(a), .2505(b) and .2506. (emphasis original)

We find substantial evidence in the record to support these findings and conclusions. We acknowledge, as did the hearing officer, Charter's efforts to demonstrate local support for the project through personal letters, public petitions and the live testimony of medical professionals. We must, however, defer to the expertise of CON analysts in determining the sufficiency of the support evidenced in Charter's application and its level of conformity with CON review criteria. *See, State ex rel. Utilities Comm. v. Duke Power*, 305 N.C. 1, 287 S.E. 2d 786 (1982). Heffner testified that although he ultimately did receive some documentation of support for Charter's proposal, it was not representative of all the counties Charter proposed to serve, and did not include indications of support from most of the facilities specified in the notice of incompleteness.

After an exhaustive review of the record, we, also, find no evidence of support from local mental health centers, substance abuse facilities, courts, local hospitals, or medical education facilities — entities from whom expressions of support were specifically requested in the notice of incompleteness and whose support Heffner stated was crucial to the success of such a project. In addition, the record discloses substantial evidence of active opposition to the proposal from key health care facilities and professionals in the area, including letters of opposition from several doctors listed on Charter's application as supporters of the proposal.

We conclude that substantial evidence exists in the record as a whole to support the agency's findings and conclusions that Charter's proposal lacked support. These assignments of error are, therefore, overruled.

## II

Charter next contends that DHR, through project analyst Heffner, erroneously determined that Charter's psychiatric bed proposal exceeded psychiatric bed need in HSA VI. Charter

argues that DHR's conclusion that there is a need for only 37 psychiatric beds, 7 beds fewer than Charter's 44 bed proposal, is based upon unlawful procedure, violates the APA and CON law, and denies Charter due process of law and equal protection under the law. Charter further argues that DHR's findings and conclusions on bed need are not supported by substantial evidence. We reject these arguments.

[4] Charter first asserts, notwithstanding its assignments of error related to the methodology of computing bed need, that there is no real issue between the parties as to bed need because Charter is willing to accept an approval by DHR for seven (7) fewer beds than proposed in the application. Unquestionably, DHR is authorized to approve projects for fewer beds than are proposed by an applicant. G.S. 131-182(b) (1981). The power to make such conditional approvals is discretionary, however, and not mandatory. *See In re Humana Hosp. Corp. v. N.C. Dept. of Human Resources,* 81 N.C. App. 628, 345 S.E. 2d 235 (1986).

We are not persuaded that the evidence presented in the present case would support an approval conditioned on Charter's acceptance of seven (7) fewer beds. Charter presented no evidence in its application or at the contested case hearing which indicated a willingness to accept a certificate of need for fewer beds than those proposed. Moreover, Charter's proposal was for a *minimum* total of 65 beds. That total, including 21 addictive disease beds and 44 psychiatric beds, was presented in Charter's initial proposal as the minimum number of beds which would "allow the facility to achieve the necessary economies of scale that will result in both improved patient care, financial viability and cost control." There being no evidence in the record to indicate that Charter's proposal was economically feasible with fewer beds, we find no basis in the record for such a conditional approval, and we cannot say that DHR abused its discretion by failing to approve a certificate of need for seven (7) fewer beds.

[5] Charter next argues that Heffner departed from the SMFP bed need methodology and, in effect, created his own methodology for determining the psychiatric bed need in Charter's service area. Charter asserts that Heffner's computation of psychiatric bed need was fatally flawed because his methodology used different assumptions in calculating need and inventory of psychiat-

ric beds while the SMFP methodology requires the use of the same assumptions in calculating need and inventory of psychiatric beds. Charter further argues that DHR, by refusing to scrutinize Heffner's methodology as compared to other methodologies proposed by Charter, created an irrebuttable presumption that Heffner's methodology was correct, resulting in a complete denial to Charter of any review of the need for its proposed project. We disagree.

Under G.S. 131-181(a)(1) (1981), DHR is required to consider the relationship of a proposed project to the SMFP. Promulgated as a CON regulation, the SMFP provides bed need projections for use in determining whether proposals for additional beds and services can be approved under the CON program. 10 NCAC 3R .1003(a)(4) (1983). The SMFP also adopts methodologies for use in determining the need for particular health services such as psychiatric beds.

Under CON regulations, the "correctness, adequacy, or appropriateness of criteria, plans, and standards shall not be an issue in a contested case hearing." 10 NCAC 3R .0420 (1983). At the contested case hearing, Heffner testified that he utilized the 1983 SMFP methodology to compute psychiatric bed need in HSA VI and in Charter's proposed service area. As a result, the hearing officer concluded:

> 17. The methodology used by the Certificate of Need Section to determine the 37-bed need is from the 1983 SMFP, and like the HSA need determination, it is also not subject to review for correctness. 10 NCAC 3R .0420.

It follows, therefore, that no presumption, irrebuttable or otherwise, was created or applied by the acts and conclusions of the hearing officer. Rather, he properly concluded that the *use* of the methodology required by the SMFP was an issue specifically not reviewable at the contested case hearing. Heffner's *application* of the SMFP methodology to Charter's proposal was, however, open to scrutiny at the contested case hearing for analytical, procedural and mathematical correctness.

Charter presented evidence that Heffner's application of the SMFP methodology to Charter's proposal was analytically flawed. Ronald T. Luke, Ph.D., an expert in the field of health planning,

testified that he reviewed Heffner's analysis of Charter's proposal and the psychiatric bed need in the proposed service area. He testified that Heffner utilized inconsistent assumptions in his SMFP analysis which resulted in a showing of inadequate need for Charter's psychiatric bed need proposal. Dr. Luke testified that Heffner projected the need for state psychiatric beds by assuming that the utilization of state psychiatric beds for Charter's proposed service area is the same as that for the entire HSA. However, in determining the inventory of existing state psychiatric beds in Charter's proposed service area, Heffner calculated, and used, the actual utilization rate, rather than the assumed utilization rate, of state psychiatric beds within Charter's proposed primary service area. Dr. Luke found a "gross and fatal inconsistency" in Heffner's analysis which was "indefensible by logic, by the state plan" or by any plan he "could imagine." He testified that the analysis was further flawed by Heffner's failure to visit or contact existing psychiatric facilities for observation and study of their interaction. Luke concluded that the SMFP methodology, if applied correctly, yielded an unmet bed need of at least 44 psychiatric beds in Charter's service area and not 37 beds as computed by Heffner.

Also testifying as an expert in health planning, Heffner acknowledged the inconsistencies alleged by Charter and stated that they were the result of his application of the SMFP methodology on a sub-HSA level. He further testified that he adopted the sub-HSA approach in order to accurately account for local circumstances, and that the use of a sub-HSA approach was an acceptable methodology for computing bed need.

After hearing the testimony of both experts, the hearing officer concluded:

18. It is appropriate to apply the 1983 SMFP methodology at the sub-HSA level because it is the best and most reliable methodology available, and it is a flexible methodology, as is indicated by reference to specific adjustments for special local circumstances. 1983 SMFP, Part IV, *Data Analysis*, and *Description of the Psychiatric Bed Need Methodology*. The proponents' implied suggestion, that the great volume of quality professional effort that produced the SMFP methodology be passed over for some other meth-

odology either from another state with vastly different demographic characteristics or from some national organization, is rejected.

19. The calculations under the 1983 SMFP methodology were done properly, and they were not invalidated by inconsistent assumptions or flawed logic as suggested by the proponents at hearing.

\*    \*    \*

23. The Charter Pines proponents have not demonstrated an unmet need for psychiatric beds in the proposed service area that is as great as their proposed project's 44 beds; the need is less than that proposed.

24. Because the number of proposed psychiatric beds exceeds the unmet need for the service area, the project is Non-Conforming with Review Criteria (a)(1), (a)(3), (a)(5), (a)(6), (a)(12), (a)(17), (a)(19), and (a)(21), and special criteria .2504(a) and .2508(a).

We hold that the hearing officer's findings and conclusions on the issue of bed need are supported by substantial evidence. The parties presented conflicting expert testimony concerning the proper application of the 1983 SMFP methodology. The record shows that all the evidence was fully considered by the hearing officer.

North Carolina is in accord with the well-established rule that it is for the administrative body, in an adjudicatory proceeding, to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence if any.

Duke Power, supra, at 21, 287 S.E. 2d at 798. The hearing officer was empowered to use his own best judgment in evaluating the weight and credibility of the evidence in light of his administrative expertise. He was not bound by the testimony of Charter's expert, nor was he required to accept it as true. His determination that Heffner properly applied the 1983 SMFP methodology to Charter's proposal for psychiatric beds required the use of his administrative expertise in judging the credibility of the expert tes-

timony presented. We cannot second-guess the exercise of that expertise and, finding substantial evidence in the record to support DHR's findings and conclusions, overrule these assignments of error.

### III

Finally, Charter contends that DHR's determination that Charter's proposal did not conform to CON criteria, standards, and plans was arbitrary and capricious. Charter argues that DHR demonstrated an irrational unfairness by treating Charter differently than other similarly situated applicants and by violating all of the standards set out in G.S. 150A-51. We disagree and overrule this assignment of error.

Agency decisions are arbitrary or capricious when they are " 'whimsical' because they demonstrate a lack of fair and careful consideration; when they fail to indicate 'any course of reasoning in the exercise of judgment,' or when they impose or omit procedural requirements that result in manifest unfairness in the circumstances though within the letter of statutory requirements." *Rate Bureau, supra,* at 420, 269 S.E. 2d at 573 (citations omitted). In light of our resolutions of the other issues in this case, we do not find that DHR acted "whimsically" or unfairly in its disapproval of Charter's proposal. To the contrary, we find that Charter's application was given a careful and thorough review according to the applicable criteria, standards, and plans of the CON law. DHR's decision is amply supported by substantial evidence and reflects reasoned decisionmaking on the part of the agency officials involved. Charter's remaining assignments of error are therefore overruled.

### IV

In summary, we hold that DHR's findings, conclusions, and decision to disapprove Charter's application for a certificate of need are supported by substantial evidence and are unaffected by other error of law. The decisions of the Department and the Superior Court are

Affirmed.

Chief Judge HEDRICK and Judge WELLS concur.

Judge WELLS concurring.

I find the majority opinion to be correct in law and I therefore concur. But, in concurring, I must say two things. One, if I had the power of *de novo* review in this case, I would vote to reverse and to approve Charter Pine's application. Second, I find the administrative review process in the case to be characterized by bureaucratic nit-picking, especially on the issue of support for the proposed facility. This aspect of the matter must be very frustrating for those who are interested in providing additional facilities to accommodate the public need for mental health care.