BRITTHAVEN, INC., D/B/A BRITTHAVEN OF MORGANTON, Petitioner-Appellant v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, DIVISION OF FACILITY SERVICES, Respondent-Appellee, and VALDESE NURSING HOME, INC., Respondent-Intervenor-Appellee

No. 9410DHR502

(Filed 4 April 1995)

1. **Hospitals and Medical Facilities or Institutions § 15 (NCI4th)— certificate of need—review of decision—de novo hearing not required**

   A nursing facility owner was not entitled to a *de novo* proceeding by an administrative law judge when it petitioned for a contested case hearing challenging an agency's denial of its application for a certificate of need for additional nursing and home-for-the-aged beds in its facility, and the agency's initial decision was properly reviewed by the administrative law judge. The subject matter of a contested case hearing before an administrative law judge is the agency decision, and the administrative law judge is to determine whether the petitioner has met its burden of showing that the agency substantially prejudiced its rights and that the agency acted outside its authority, acted erroneously, acted arbitrarily and capriciously, used improper procedure, or failed to act as required by law. N.C.G.S. §§ 131E-188, 150B-23(a).

   **Am Jur 2d, Hospitals and Asylums §§ 3 et seq.**

2. **Hospitals and Medical Facilities or Institutions § 12 (NCI4th)— competing certificate of need applications— applications judged individually, then compared—least costly or most effective alternative**

   It is not the intent of N.C.G.S. § 131E-183(a) to compare competing applications for a certificate of need under Criterion 4, that applicant shall demonstrate that the least costly or most effective alternative has been proposed, but rather to judge each application individually under Criterion 4, as well as the remaining criteria set forth in the statute, and only thereafter analyze the competing proposals to determine which is better overall. Even though respondent improperly applied Criterion 4, the agency's initial decision was supported by substantial evidence, and the same result would have been reached if the agency had analyzed the applications by the required two-step process.

   **Am Jur 2d, Hospitals and Asylums §§ 3 et seq.**

3. **Hospitals and Medical Facilities or Institutions § 12 (NCI4th)— certificate of need applications—method of allocating bed need proper**

The method of allocating bed need used by the project analyst of the Certificate of Need Section in determining where nursing beds should be located, including a subcounty analysis, was included in the findings of the recommended decision and eventually adopted in the Final Decision, was supported by substantial evidence and was not without reasonable basis, and was not arbitrary, capricious, or inconsistent with agency practice.

**Am Jur 2d, Hospitals and Asylums §§ 3 et seq.**

Appeal by petitioner from final decision entered 21 November 1993 by John M. Syria, Director of the North Carolina Department of Human Resources Division of Facility Services, Burke County. Heard in the Court of Appeals 11 January 1995.

In 1992, the State Medical Facilities Plan (hereinafter "SMFP") identified a need for sixty nursing beds in Burke County. On 16 July 1992, North Carolina Department of Human Resources, Division of Facility Services, Certificate of Need Section (hereinafter "the Agency") received proposals from three different applicants, each seeking to develop or expand their respective Burke County facilities.

Prior to the 1992 review, Valdese Nursing Home, Inc. (hereinafter "Valdese") had received a certificate of need to construct an eighty bed nursing facility, consisting of forty nursing beds and forty home-for-the-aged beds. During the 1992 review, Valdese submitted an application seeking to convert twenty home-for-the-aged beds to twenty nursing facility beds, and to construct forty new nursing facility beds in Valdese, North Carolina. Burke Health Care Center, Inc. (hereinafter "Burke") filed an application seeking to construct a new eighty bed combination nursing facility in Morganton, North Carolina. Britthaven, Inc., d/b/a Britthaven of Morganton (hereinafter "Britthaven") submitted a CON application, seeking to add sixty additional nursing facility beds and five home-for-the-aged beds at its existing one hundred twenty-one nursing bed facility located in Morganton.

On 25 November 1992, following a public hearing the Agency notified Britthaven and Burke of its decision to deny their applications and to approve the Valdese application. Only Britthaven filed a petition for contested case in the Office of Administrative Hearings (here-

inafter "OAH"), challenging the denial of its application and approval of Valdese's application. Valdese intervened. On 17 September 1993, an administrative law judge (hereinafter "ALJ") affirmed the Agency's decision to approve the Valdese application, but concluded that the Agency failed to use proper procedure in conducting the review of the applications under the applicable statutory criteria. The ALJ held, however, that "such procedural imperfection amounts to harmless error not affecting the outcome of the Agency decision."

On 21 November 1993, the Director of the Division of Facility Services issued the Final Decision. He adopted and affirmed the ALJ's findings of fact, but disagreed "to the extent that [the Recommended Decision] implies that the Agency improperly conducted the review of the applications . . . ." Britthaven appeals the Final Decision.

Additionally, Respondent Valdese presents a cross-assignment of error pursuant to North Carolina Rule of Appellate Procedure, Rule 10(d) (1994) pertaining to the exclusion of evidence that Britthaven misrepresented certain information in its CON application.

*Bode, Call & Green, by Robert V. Bode, Nancy O. Mason, and Diana E. Ricketts, for petitioner appellant.*

*Attorney General Michael F. Easley, by Associate Attorney General Sherry L. Cornett, for respondent North Carolina Department of Human Resources.*

*Smith, Helms, Mullis & Moore, L.L.P., by Maureen Demarest Murray and Terrill Johnson Harris, for respondent Valdese Nursing Home, Inc.*

ARNOLD, Chief Judge.

[1] Petitioner Britthaven's first assignment of error is that the Agency's initial decision was improperly reviewed, thereby restricting the applicant's statutory hearing rights. Specifically, petitioner argues that the ALJ's Recommended Decision and the Director's Final Decision afforded a "presumption of correctness" as to the Agency's initial decision, rather than providing a *de novo* hearing as to all disputed issues. Petitioner's argument is without merit.

The review procedure set forth in certificate of need (hereinafter "CON") law allows for the agency to make an initial decision as to whether an applicant is entitled to a certificate of need. N.C. Gen. Stat. § 131E-186(a) (1994). If there are competing applications, the

agency must hold a public hearing. G.S. § 131E-185(a)(2). The agency's decision to approve, approve with conditions, or deny an application for a certificate of need is based upon its determination of whether the applicant has complied with statutory review criteria under N.C. Gen. Stat. § 131E-183(a) and rules adopted by the agency, in this case, 10 North Carolina Administrative Code § 3R.1100, *et seq.* (1991). G.S. § 131E-186(a) and (b).

Thereafter, administrative and judicial review of the agency's decision is governed by N.C. Gen. Stat. § 131E-188. Any "affected person," such as Britthaven, is entitled to a contested case hearing under Article 3 of Chapter 150B of the General Statutes. G.S. § 131E-188(a). Under Chapter 150B, a petitioner is afforded a full adjudicatory hearing before the ALJ, including an opportunity to present evidence and to cross examine witnesses. G.S. §§ 150B-23(a) and 150B-25(c) and (d) (1991). The ALJ then makes a recommended decision or order, containing findings of fact and conclusions of law. G.S. § 150B-34(a). Based solely upon its review of an official record prepared by the OAH, which includes evidence presented at the contested case hearing, the agency issues a final decision, either adopting the ALJ's recommended decision, or if not, stating specific reasons why it did not adopt the recommended decision. G.S. § 150B-36(b). Finally, any affected person who was a party in the contested case hearing may appeal to this Court for judicial review of all or any portion of the final decision. G.S. § 131E-188(b).

Petitioner contends that the exercise of its right to an evidentiary hearing under the contested case provision of N.C. Gen. Stat. § 131E-188(a) commenced a *de novo* proceeding by the ALJ intended to lead to a formulation of the final decision. Petitioner misconstrues the nature of contested case hearings under the CON law and the Administrative Procedure Act. The subject matter of a contested case hearing by the ALJ is an agency decision. Under N.C. Gen. Stat. § 150B-23(a), the ALJ is to determine whether the petitioner has met its burden in showing that *the agency* substantially prejudiced petitioner's rights, and that the agency also acted outside its authority, acted erroneously, acted arbitrarily and capriciously, used improper procedure, or failed to act as required by law or rule. G.S. § 150B-23(a). The judge determines these issues based on a hearing limited to the evidence that is presented or available to the agency during the review period. *See In re Application of Wake Kidney Clinic*, 85 N.C. App. 639, 355 S.E.2d 788, *disc. review denied*, 320 N.C. 793, 361 S.E.2d 89 (1987); *see also* 2 Am. Jur. 2d, *Administrative*

*Law* § 299 (1994) ("[U]pon resumption of formal proceedings all evidence presented in the informal proceeding becomes part of the record of the formal proceeding."). Therefore, based on the evidence presented here, the Agency's decision was properly reviewed for error under N.C. Gen. Stat. § 150B-23(a).

Furthermore, petitioner's reliance on *Ashbacker Radio Corp. v. Federal Com. Com.*, 326 U.S. 327, 90 L. Ed. 108 (1945) for its contention that petitioner is entitled to a *de novo* hearing in the OAH is misplaced. The Supreme Court merely held in *Ashbacker* that "where two bona fide applications are mutually exclusive the grant of one without a hearing to both deprives the loser of the opportunity which Congress chose to give him." *Id.* at 333, 90 L. Ed. at 113. In this case, unlike in *Ashbacker*, each applicant was afforded an opportunity to be heard on their competing applications.

[2] Petitioner's second assignment of error is that the Agency erred in its improper application of the review criterion found in N.C. Gen. Stat. § 131E-183(a)(4), referred to as Criterion 4. The ALJ agreed with petitioner that the Agency's review process "did not comport with the statutory requirements," but nevertheless found that the procedural defect amounted to "harmless error not affecting the outcome of the Agency decision." The Director in his Final Decision affirmed the ALJ's Recommended Decision, however, he disagreed with the judge "to the extent that it implies that the Agency improperly conducted the review of the applications . . . ." Therefore, there are conflicting views as to how competing applications for a certificate of need are to be compared under the statute.

Before addressing the merits of petitioner's assignment of error, the proper scope of review for this Court to review a CON case should be considered. *See Brooks, Comr. of Labor v. Grading Co.*, 303 N.C. 573, 281 S.E.2d 24 (1981) (holding that in presenting appeals from an administrative decision to the judicial branch, it is essential for the parties to present their contentions as to the applicable scope of review, and further, the reviewing court should make clear the review standard under which it proceeds). "The nature of the contended error dictates the applicable scope of review." *Utilities Comm. v. Oil Co.*, 302 N.C. 14, 21, 273 S.E.2d 232, 236 (1981). Because the nature of this assignment of error concerns the Agency's interpretation and application of an administrative statute, the following rule applies:

When the issue on appeal is whether a state agency erred in interpreting a statutory term, an appellate court may freely substitute its judgment for that of the agency and employ *de novo* review. Although the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference by appellate courts, those interpretations are not binding. "The weight of such [an interpretation] in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Company,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124, 129 (1944).

*Brooks,* 303 N.C. at 580-81, 281 S.E.2d at 29 (citations omitted) (quoting *In re Appeal of North Carolina Savings & Loan League,* 302 N.C. 458, 465-66, 276 S.E.2d 404, 410 (1981)).

In deciding whether to issue a certificate of need, the Agency must determine whether an application is "either consistent with or not in conflict with [the criteria set forth in N.C. Gen. Stat. § 131E-183(a)]." G.S. § 131E-183(a). One of the fifteen criteria in effect, Criterion 4 states, "Where alternative methods of meeting the needs for the proposed project exist, the applicant shall demonstrate that the least costly or most effective alternative has been proposed." G.S. § 131E-183(a)(4). Petitioner contends that the Agency, in making its initial decision, improperly used Criterion 4 as a "catch-all comparative standard" to decide which of the applicants was the "least costly or most effective." In other words, once the Agency found petitioner conforming to several criteria, it in effect used the same criteria to decide Criterion 4, finding petitioner nonconforming solely because it chose Valdese as the "least costly or most effective" of the mutually exclusive applications. Petitioner argues that it is not the intent of N.C. Gen. Stat. § 131E-183(a) to compare competing applications under Criterion 4, but rather to judge each application individually under Criterion 4, as well as the remaining criteria set forth in the statute, and only thereafter analyze the competing proposals to determine which was better overall. Petitioner's argument has merit.

The CON statute calls for competing applications to be reviewed together, or "batched," in compliance with *Ashbacker,* yet the statute does not set forth a procedure as to how to compare the applications. "[A] statute must be construed, if possible, to give meaning and effect to all of its provisions." *HCA Crossroads Residential Ctrs. v. N.C.*

*Dept. of Human Res.*, 327 N.C. 573, 578, 398 S.E.2d 466, 470 (1990). A two stage process similar to that suggested by petitioner, and the ALJ in his Recommended Decision, is consistent with the language, purpose and overall scheme of the statute.

First, after the Agency "batches" all applications for competing proposals, the Agency must review each application independently against the criteria (without considering the competing applications) and determine whether it "is either consistent with or not in conflict with these criteria." G.S. § 131E-183(a). The use of singular nouns in the phrases beginning each listed criterion, such as "*the applicant* shall show" or "*the proposed project* shall show," support an initial independent evaluation of each application. Moreover, the plain language of Criterion 4 establishes that an applicant's burden is to show the least costly or most effective of the alternative methods, if any, within its *own* proposed project, not that its project is the least costly or most effective of *all* competing proposals. G.S. § 131E-183(a)(4).

Second, after each application is reviewed on its own merits, the Agency must decide which of the competing applications should be approved. This decision may include not only whether and to what extent the applications meet the statutory and regulatory criteria, but it may also include other "findings and conclusions upon which it based its decision." G.S. § 131E-186(b). Those additional findings and conclusions give the Agency the opportunity to explain why it finds one applicant preferable to another on a comparative basis. The CON law, therefore, does not contemplate that the Agency will review any criteria competitively, and subsequently find one applicant nonconforming to a criterion simply because another applicant is found conforming.

This procedure is consistent with the CON statute and its stated purpose. The language of the statute demonstrates the intent of the Legislature to have the Agency first ensure that each application comports with the statutory and regulatory criteria. Moreover, the stated purpose of the CON law to "control the cost, utilization, and distribution of health services and to assure that the less costly and more effective alternatives are made available," *In re Denial of Request by Humana Hospital Corp.*, 78 N.C. App. 637, 646, 338 S.E.2d 139, 145 (1986) (decided under former N.C. Gen. Stat. §§ 131-175 and 131-181 (1985 Supp.)), is fulfilled by the Agency's second step of making an overall comparison of the applications and supporting its decision to

grant the certificate to one applicant, and not the other, with written findings and conclusions explaining its decision.

Our next question is whether the Agency's improper application of Criterion 4 was nevertheless harmless given the ultimate decision to issue the certificate of need to Valdese. Both the ALJ and the Director agreed that the Agency's initial decision was supported by substantial evidence, and that the same result would have been reached if the Agency had analyzed the applications in the manner prescribed above. Petitioner argues that the Agency's findings under Criterion 4 were not supported by the evidence.

The scope of review here is the whole record test, "under which the findings of fact made by the agency are conclusive on appeal if they are supported by substantial evidence in the record reviewed as a whole." *Wake Kidney Clinic*, 85 N.C. App. at 644, 355 S.E.2d at 791. We are required to consider evidence which detracts from the decision, as well as evidence which supports it, but we cannot substitute our judgment for that of the Agency. *Id.* Proper application of the whole record test takes into account the administrative agency's expertise. *In re Charter Pines Hospital, Inc. v. N.C. Dept. of Human Resources*, 83 N.C. App. 161, 349 S.E.2d 639 (1986), *disc. review denied*, 319 N.C. 105, 353 S.E.2d 106 (1987).

Petitioner contends that there was insufficient evidence to support the Agency's findings and conclusions concerning Criterion 4, specifically the following: (1) Valdese was a more effective alternative with regard to geographic accessibility, (2) Valdese was the least costly or most effective alternative with regard to operating costs and charges, and (3) Valdese's application would promote competition. Although we agree with petitioner that Criterion 4 was improperly used as a catch-all standard for competing applications, after a thorough review of the record and transcripts of the OAH hearing, we find the evidence supported these findings and further serves as a rational basis for the Agency's decision that Valdese was entitled to the certificate of need. Although there was evidence presented by petitioner at the hearing which detracts from the decision, the instant case is not one in which this Court will substitute its judgment for that of a well-reasoned and supported Agency decision. *Id.*

[3] Finally, petitioner assigns as error a method of allocating bed need used by the Project Analyst of the CON Section in determining where the beds should be located. Petitioner contends that the Project Analyst improperly departed from the SMFP's method used to

compute the need for nursing beds on a county basis. Although, according to the SMFP mathematical formula, the overall need for nursing beds in Burke County was sixty, the Project Analyst used an independent sub-county analysis to determine *where* those sixty beds should be located within the county. In conducting his analysis, the Project Analyst analyzed Burke County's nursing home bed need using the same methodology used by the 1992 SMFP. He then divided Burke County into three areas, western, central and eastern, based upon the population clusters, existence of one or more nursing homes located in each area, and the highway systems. The analyst determined that eastern Burke County, in which the Valdese facility was located, had the greatest need for beds, and that the approval of Valdese's application would best address the need for additional nursing beds in Burke County. The ALJ made the following findings relevant to this issue, which were adopted by the Director in his Final Decision:

81. The Project Analyst performed an independent analysis of geographic access and used the 1992 SMFP methodology to project future bed need by township in Burke County.

82. The Project Analyst normally uses a sub-county analysis in his nursing home reviews. (Vol. II, p. 163). A sub-county analysis is consistent with Agency practice. The Project Analyst correctly determined that using townships was a valid means of analyzing where to locate nursing beds in Burke County, because the information from the 1990 census was the most current and readily available in the age categories used in the SMFP. (Vol. II, pp. 164-65). Britthaven did not provide any statistical sub-county analysis of need in its application and, in particular, did not offer a zip code analysis in its application, written comments or at the public hearing. Moreover, a zip code analysis was not practical, because maps are not always available showing the zip code areas, and zip codes can change from time to time. (Vol. I, p. 158).

. . . .

83. The Project Analyst's decision to divide Burke County into three (3) areas, western, central, and eastern, based on the existence of a population cluster and one or more nursing homes in each area, was reasonable. (Vol. II, p. 167).

Under CON regulations, the "correctness, adequacy, or appropriateness of criteria, plans, and standards shall not be an issue in a con-

tested case hearing." 10 N.C.A.C. 3R .0420 (1989); *Charter Pines Hospital,* 83 N.C. App. 161, 349 S.E.2d 639. However, while the use of the required SMFP methodology was not reviewable at the contested case hearing, the Project Analyst's application of the SMFP methodology was "open to scrutiny at the contested case hearing for analytical, procedural and mathematical correctness." *Charter Pines Hospital,* 83 N.C. App. at 175, 369 S.E.2d at 648. The rules adopted by the Department of Human Resources for the review of nursing facility applications require the applicant only to show that "at least 85 percent of the anticipated patient population lives within 45 minutes automobile driving time . . . from the facility," 10 N.C.A.C. 3R .1118(b) (1991), but nothing in the statute prohibits the analysis conducted by the Project Analyst in the instant case. Although the Agency must review the applications in accordance with statutory criteria and administrative rules adopted by the Department of Human Resources, N.C. Gen. Stat. § 131E-186(b) requires the Agency to provide notice of its findings and conclusions upon which it based its decision, but does not limit those findings to statutory criteria or rules. In fact, the Project Analyst testified that it was his usual practice to conduct a sub-county analysis when receiving competing applications from applicants who propose to locate facilities in different areas within the county. As this Court stated in *Charter Pines Hospital:*

> The hearing officer was empowered to use his own best judgment in evaluating the weight and credibility of the evidence in the light of his administrative expertise. He was not bound by the testimony of [the petitioner's] expert, nor was he required to accept it as true. His determination that [the agency's project analyst] properly applied the 1983 SMFP methodology to [the petitioner's] proposal for psychiatric beds required the use of his administrative expertise in judging the credibility of the expert testimony presented. We cannot second-guess the exercise of that expertise and, finding substantial evidence in the record to support DHR's findings and conclusions, overrule these assignments of error.

*Id.,* 83 N.C. at 177-78, 349 S.E.2d at 649-50. The findings made in the Recommended Decision and eventually adopted in the Final Decision include the sub-county analysis performed by the Project Analyst, which was supported by substantial evidence and was not without reasonable basis, was not arbitrary and capricious or inconsistent with Agency practice.

In a related issue we are not persuaded by petitioner's argument that the ALJ abused his discretion by not allowing Britthaven's rebuttal expert testimony. The judge properly excluded the testimony of an expert witness identified by petitioner to rebut the Project Analyst's sub-county need analysis because petitioner failed to disclose its witness in a timely manner. *See Mt. Olive Home Health Care Agency, Inc. v. Dept. of Human Resources,* 78 N.C. App. 224, 336 S.E.2d 625 (1985).

For the foregoing reasons we conclude that the Agency erred in comparing the competing applications by misapplying the statutory review criteria, but, based on our review of the record, and the arguments presented by the parties, the error was harmless. In light of our disposition of petitioner's appeal there is no need to address respondent Valdese's cross-assignments of error.

Affirmed.

Judges JOHNSON and MARTIN, Mark D., concur.