IN RE THE APPEAL FROM THE APPROVAL OF THE APPLICATION OF WAKE KIDNEY CLINIC, P.A. TO ESTABLISH A HEMODIALYSIS FACILITY IN RALEIGH, NORTH CAROLINA (PROJECT I.D. #J-1945-83)

No. 8610DHR908

(Filed 19 May 1987)

1. **Hospitals § 2.1— certificate of need—dialysis facility—evidence available but not considered in original decision—properly considered by hearing officer**

The hearing officer in a contested certificate of need case for a dialysis facility did not err by receiving evidence of the financial status of two of the investors in the facility after the application was deemed closed where both investors had been named in the application; all parties were on notice that the financial records of each could be considered; and the information was available at the time of the agency's original decision.

**2. Hospitals § 2.1 — certificate of need — dialysis facility — evidence of need sufficient**

There was substantial evidence to support the conclusion that a need existed for a proposed dialysis facility where appellants operated a competing facility and had expansion plans; the Department of Human Resources properly considered only six of appellants' planned eight new stations as existing because only six had been approved for medicaid/medicare reimbursement; the director of the dialysis facility in Chapel Hill testified that his facility had a waiting list, that he knew of at least eighteen patients he could refer to the proposed facility, and that he was informed that there was a waiting list at appellants' clinic as well; a doctor proposing the new facility testified that he was denied referral privileges by appellants' clinic and that his patients were forced to change doctors if they wished to utilize the Raleigh facility; evidence by appellants that their existing facility was underutilized conflicted with statements made when applying to the federal government for medicare approval for expanding their facility; appellants' clinic had recently completed an expansion; and utilization rates always went down when new stations were first added.

**3. Hospitals § 2.1 — certificate of need — dialysis facility — no less costly or more effective alternatives**

In a contested certificate of need case for additional kidney dialysis units, there was sufficient evidence to support the conclusion that there were no less costly or more effective alternatives to the proposed facility where the owner of a competing clinic testified that it would be less costly and more effective to allow his clinic to expand again, but such an expansion would not solve the problem caused by that clinic's refusal to accept referrals from other doctors, and there was substantial evidence to conclude that the proposed facility would be the most effective method of providing home dialysis training services.

**4. Hospitals § 2.1 — certificate of need — dialysis facility — proposal financially feasible**

The conclusion of the Department of Human Resources that a proposed dialysis facility was financially feasible was supported by substantial evidence in the whole record where the budget of the facility appeared to be reasonable, viewed in light of other factors including the need for the proposed service, the utilization projections, and the availability of funds for the project.

APPEAL by petitioners from the North Carolina Department of Human Resources Division of Facility Services. Decision entered 21 February 1986. Heard in the Court of Appeals 6 April 1987.

Wake Kidney Clinic, P.A., applied to the respondent Certificate of Need Section (the Section) of the Department of Human Resources (DHR) for a certificate of need to establish an End Stage Renal Disease (ESRD) facility for kidney dialysis in Raleigh.

The Section recommended approval of the application for a seven-station facility. Petitioners, Raleigh Clinic, P.A., and George A. Glaubiger, M.D., as affected persons under the relevant statute, petitioned the Section for a reconsideration of its decision.

Upon reconsideration, the Section again recommended issuance of the certificate of need, but limited to a six-station facility. Petitioners requested a hearing which was conducted on 11 March 1985. The Hearing Officer affirmed the recommendation of the Section and petitioners appealed to the designee of the Secretary of Human Resources. The designee also affirmed the decision and ordered the issuance of the certificate of need. This decision is the "final agency decision" under G.S. 131E-186 and petitioners appeal directly to this Court pursuant to G.S. 7A-29(a) and G.S. 131E-188(b).

*Bode, Call and Green, by Robert V. Bode; and Ross and Hardies, by James B. Riley, Jr., of the State Bar of Illinois, for petitioner-appellants.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Gayl M. Manthei, for respondent-appellee North Carolina Department of Human Resources.*

*Jordan, Price, Wall, Gray and Jones, by William R. Shenton and Stephen R. Dolan, for intervenor-appellee Wake Kidney Clinic, P.A.*

PARKER, Judge.

The two main issues raised by petitioners on this appeal are whether DHR erred in considering evidence petitioners contend constituted an improper amendment to the application and whether the criteria necessary to DHR's decision were supported by substantial evidence. We conclude that the challenged evidence was properly before DHR and that the decision has substantial support in the record. Therefore, we affirm the decision to grant the certificate of need to Wake Kidney Clinic, P.A.

Wake Kidney Clinic, P.A., submitted its application for a certificate of need on 15 November 1983. At that time, the Health Services Area (HSA) to be served by the proposed facility had 65 kidney dialysis stations and a projected need of 72. There were three existing facilities serving that need: North Carolina Memo-

rial Hospital in Chapel Hill had 25 stations, Duke University Medical Center in Durham had 18, and Raleigh Kidney Clinic, P.A., in Raleigh had recently expanded from 16 to 22 stations.

Under North Carolina's Certificate of Need statute, G.S. 131E-175, *et seq.*, a certificate of need would be required to establish a new kidney dialysis facility, but one would not be required to expand an existing facility. However, the federal government must approve both a new facility or an expansion in order for the facility or expansion to receive medicare or medicaid funds. This approval is critical to the survival of a facility, as over eighty percent of dialysis patients are medicare or medicaid recipients. On 31 December 1983, petitioner George A. Glaubiger, M.D., notified the Section that petitioner Raleigh Kidney Clinic, P.A., had applied to the federal government for approval of an additional eight kidney dialysis stations. If the approval were to be granted, the expansion would fill the projected need of the HSA.

The federal government approved six additional stations at Raleigh Kidney Clinic on 26 March 1984. Unaware of that decision, the Section approved Wake's application for a certificate of need for a seven-station ESRD facility on 29 March. Petitioner filed a request for reconsideration of that decision pursuant to 10 N.C.A.C. § 3R.0314 (repealed effective 1 February 1986) on the grounds that the expansion of the Raleigh Kidney Clinic had obviated the need for an additional facility.

[1] Petitioners also presented evidence that at least two of the four initial investors planned for the Wake Kidney Clinic, P.A., could not participate as they were not licensed physicians. *See* G.S. 55B-4. A third listed shareholder was a licensed physician in several states and needed to meet only *pro forma* requirements in order to become licensed in North Carolina. However, the Section had not investigated or considered this doctor's assets in analyzing the financial feasibility of the project and petitioners contended that to do so on reconsideration would be improper. Further, petitioners contended that as the out-of-state doctor was not yet licensed in N.C., his assets could still not be considered in any event. The fourth shareholder is Dr. J. Keith Keener, M.D., the local Raleigh nephrologist who would operate the clinic. There is no dispute that his assets could be utilized as support for the

facility, but petitioners argue that his assets are insufficient standing alone to make the project financially feasible.

The out-of-state doctor, Dr. Alan Peabody, M.D., is involved in the operation of several dialysis facilities in other states. His assets, if properly considered, are more than adequate to guarantee the short-term financial feasibility of the Wake project. Dr. Peabody was listed on Wake's original application as a shareholder in the project, and he provided a bank reference. However, that reference was not checked in the initial review of the project as the Section, unaware of the statute limiting financial participation in professional associations to licensed professionals, considered the assets of the other three shareholders more than adequate and did not consider it necessary to check Dr. Peabody's financial status. Appellants contend that it was then improper to admit evidence of Dr. Peabody's financial records at the reconsideration hearing as that evidence was not before the Section before its original decision and that this change constituted an amendment to the application. This argument is without merit.

The rules adopted by the Department of Human Resources to govern contested certificates of need hearings prevent a party from amending his application once it is deemed completed by the Section. 10 N.C.A.C. § 3R.0306. Wake's application was declared complete by the Section on 30 November 1983. In our view, the evidence presented at the hearing in this case concerning Dr. Peabody's financial status did not constitute an amendment to the application, nor did the evidence concerning a bank line of credit made available to Dr. Keener on 13 March 1985. Both doctors were named as investors in the project on the application and both supplied bank references. All interested parties were on notice that the financial records of each could be considered. Thus, the information relied upon by the agency in its reconsideration decision was available to it at the time of the original decision. The hearing officer is properly limited to consideration of evidence which was before the Section when making its initial decision, but the hearing officer is not limited to that part of the evidence before it that the Section actually relied upon in making its decision. It is also permissible for the parties to add updated information concerning matters which were before the Section in making its original decision. *See In re Humana Hosp. Corp. v. N.C. Dept. of Human Resources*, 81 N.C. App. 628, 345 S.E. 2d 235

(1986). We conclude that the evidence of Dr. Peabody's financial status and of Dr. Keener's bank line of credit did not constitute improper amendments to the application. The evidence was properly considered and the assignment of error is overruled.

The remaining question before us is whether the decision of DHR to grant the certificate of need to Wake Kidney Clinic, P.A., is supported by the evidence. Our scope of review is the whole record test, under which the findings of fact made by the agency are conclusive on appeal if they are supported by substantial evidence in the record reviewed as a whole. *Hospital Group of Western N.C. v. N.C. Dept. of Human Resources*, 76 N.C. App. 265, 332 S.E. 2d 748 (1985). This Court is required to consider evidence which detracts from the decision, as well as evidence which supports it. *Id.* However, we are not to substitute our judgment for that of the agency. *Id.*

General Statute 131E-183 lists the criteria which DHR must apply when evaluating an application for a certificate of need. Appellants contend that there was insufficient evidence to support the agency's findings and conclusions concerning Wake's compliance with three of the applicable criteria. The disputed criteria are: (i) the need for the services, G.S. 131E-183(a)(3); (ii) the availability of less costly or more effective alternatives, G.S. 131E-183(a)(4); and (iii) the immediate and long-term financial feasibility of the project, G.S. 131E-183(a)(5).

[2] There was substantial evidence to support the conclusion that a need existed for the proposed facility. At the time of the original decision, there existed 65 dialysis stations in the area with a projected need of 72. Appellants, Dr. Glaubiger and his Raleigh Kidney Clinic, P.A., were approved by the federal government for an expansion of six stations, although Dr. Glaubiger testified at the hearing that eight additional stations were planned. New projections from the North Carolina Kidney Council, an independent organization, presented at the contested case hearing showed a need for 77 stations. The agency considered only six of appellants' new stations, arriving at a total of 71 existing stations and, therefore, approved the application of Wake Kidney Clinic, P.A., limited to six stations.

Appellants argue that it was improper for the agency to only consider six of the eight planned additional stations at the Ra-

In re Application of Wake Kidney Clinic

leigh clinic. Only those six had been approved by the federal government for medicare/medicaid reimbursement. The evidence presented at the hearing showed that eighty to ninety percent of the dialysis patients in the area to be served relied on medicare or medicaid to pay for the dialysis treatment. The agency, therefore, was justified in concluding that only federally-approved stations should be considered when counting the number of existing stations.

Other evidence of need came from the testimony of Dr. William D. Mattern, the director of the ESRD facility at North Carolina Memorial Hospital in Chapel Hill. His facility had a waiting list and he knew of at least eighteen patients who he could refer to the proposed facility. Dr. Mattern also testified that he had been informed that there was a waiting list for the Raleigh Clinic as well and that no more transfers would be accepted there from NCMH. Further evidence of need was the testimony of Dr. Keener, the proponent of the proposed facility, that he was denied referral privileges by the Raleigh Kidney Clinic and that all of his ESRD patients were forced to change doctors if they wished to utilize the Raleigh Clinic for dialysis. As most of his ESRD patients lived closer to the Raleigh facility than to NCMH or Duke, this resulted in an undue burden on his patients.

Evidence of lack of need for the proposed facility came from Dr. Glaubiger who testified that his facility was experiencing only a seventy percent utilization rate. An eighty percent utilization rate is used as a threshold by state and federal regulations as being the point when additional facilities should be considered. However, the evidence was that utilization rates always went down when new stations first were added. The Raleigh Clinic had just added a total of twelve stations in the eighteen-month period preceding the hearing. The agency properly gave this evidence little weight, as the utilization rates cited by Dr. Glaubiger were depressed by the rapid expansion of the Raleigh Clinic. Prior to the expansion, the utilization rate had been over ninety percent. Duke and NCMH also reported utilization rates of over ninety percent. Further, the claim of low utilization rates conflicted with representations made by Dr. Glaubiger when applying to the federal government for medicare approval of additional dialysis stations. We conclude that there was substantial evidence in the

record as a whole supporting DHR's conclusion that a need existed for the facility.

[3]   Appellants also contend that there was not sufficient evidence to support the conclusion that there were no less costly and more effective alternatives to the proposed facility. Naturally enough, Dr. Glaubiger testified that it would be less costly and more effective to simply allow his Raleigh Clinic to expand again. However, such an expansion would not solve the problem which confronted Dr. Keener's patients caused by the refusal of the Raleigh Clinic to allow Dr. Keener to refer patients there. Dr. Mattern testified that he, too, had experienced difficulty in referring patients to Dr. Glaubiger's clinic.

In addition, there was considerable testimony concerning the merits of home dialysis for ESRD patients. Apparently, Dr. Keener is a strong advocate of home dialysis, while Dr. Glaubiger is not. The director of the NCMH program testified that Dr. Glaubiger has "not been very cooperative" in statewide efforts to encourage home training. Nancy Martin, the staff person in the Section of the Division of Facility Services who evaluated the application of Wake Kidney Clinic, P.A., testified that she considered the home training issue in evaluating the application, as Dr. Keener included in the application a statement that his facility would "aggressively" attempt to train patients to dialyze at home. Encouraging home dialysis is the policy of both the state and federal governments as it is less costly and encourages dialysis patients to be more independent. The agency had substantial evidence before it to conclude that the proposed facility would be the most effective method of providing home dialysis training services. For all the above reasons, there was substantial evidence in the whole record to justify the conclusion that there were no less costly or more effective alternatives for providing the desired services.

[4]   Finally, appellants contend that the agency erred in concluding that the Wake Kidney Clinic project was financially feasible. In support of this contention, appellants argue that the assets of Dr. Peabody should not have been considered; that the assets of Dr. Keener were insufficient standing alone to support the project; and that the proposed budget for Wake Kidney Clinic, P.A., was unreasonable.

We have already concluded that the agency did not act in an unfair or illegal manner in considering evidence of Dr. Peabody's financial status simply because it had not been utilized in the initial decision. Appellants also argue that Dr. Peabody's assets still could not have been considered as he was not yet a licensed physician in North Carolina and was, therefore, ineligible to financially participate in a professional association. This argument is without merit. Dr. Peabody testified that he had made all the necessary applications to the State Board of Medical Examiners to become a licensed physician. He was not required to take any tests and there were no anticipated hindrances to his obtaining his license to practice medicine in this state. Appellants presented no evidence to the contrary. The agency was justified in relying on Dr. Peabody's assets, as all the evidence indicated that he would be a licensed physician and thus eligible to participate in the project by the time the CON would be issued.

In light of our conclusion above, we need not address the contention of appellants that Dr. Keener's assets alone were insufficient to support the project. It is undisputed that the assets of Drs. Keener and Peabody together are more than sufficient to make the project financially feasible in the short term.

Long-term financial feasibility is also a relevant criterion and appellants contend that the proposed budget submitted by Wake Kidney Clinic, P.A., was unreasonable and that, in fact, the project is not feasible over the long term. Applicants for a certificate of need are required to submit a budget showing revenue and expense projections for the first three years of operation. Appellants contend that the budget submitted by Wake Kidney Clinic overestimated revenues while underestimating expenses and that, in any event, the submitted budget was for a proposed seven-station facility. Because the certificate of need was approved for a six-station facility, appellants contend the budget is even more unreasonable.

The evidence presented at the hearing showed that the budget had been prepared by Ms. Vicki Haas, a Charlotte-based health services consultant hired by Dr. Keener to prepare the CON application for Wake Kidney Clinic, P.A. Ms. Haas had been in the consulting business for about three years and she had prepared CON applications for dialysis facilities before preparing the ap-

plication in this case. Also participating in the preparation of the budget was Dr. Peabody, who owns dialysis facilities in Florence and Bennettsville, South Carolina. He testified to his familiarity with the costs and revenues of operating a dialysis facility. Both Ms. Haas and Dr. Peabody testified that the budget submitted by Wake Kidney Clinic, P.A., was reasonable and, in fact, overstated the "Expenses" column by including some items in the column which were not necessary to include there. For example, the proposed budget contained an allowance for $7,500 in interest payments over the year. This item was in the budget even though all capital financing was to be through the personal investing of Drs. Keener and Peabody. The interest was included as a contingency should the facility have to borrow money to meet its operating expenses prior to receiving its first medicare/medicaid reimbursements. Dr. Peabody did testify that the reduction in the number of approved stations from seven to six would decrease revenues more than it would expenses, but he still expected the Clinic to show a profit after the first year.

Nancy Martin, the staff person in the CON Section who reviewed the application, testified that in her analysis of the proposed budget, she calculated anticipated revenues using a lower utilization rate than that used by the applicant and she concluded that the project would still be financially feasible. She also stated that there were some items which were to be paid as part of the capital expenditures which the applicant had listed on the budget. Without these items, she believed the project would appear even more financially attractive.

Appellants contend that the revenue projections in the budget are unreasonable. However, this argument, in reality, merely repeats the argument that the need for the facility does not exist, as appellants argue that the proposed facility will not get as many patients as projected in the budget. This argument is without merit, as we have already concluded that substantial evidence supports the conclusion that a need exists for the proposed facility.

Appellants also contend that the applicants underestimated the project's expenses by failing to include a line item for administrative expenses. However, testimony from Vicki Haas and Dr. Peabody indicated that the estimated administrative costs

were mislabeled "Property" in the submitted budget. (The proposed facility would have no "property" costs as it would be in a leased facility and rent was included elsewhere in the budget.) The agency accepted this testimony and concluded that the estimated administrative costs were reasonable. There was no credible evidence to the contrary, as neither Dr. Glaubiger nor Dr. Peabody, the two doctors experienced in operating dialysis facilities, could give an estimate of the administrative costs at their facilities. Appellants introduced a medicare audit form for Dr. Peabody's Bennettsville, S.C. facility which showed administrative costs at over $40,000 for a four-month period, while Wake Kidney's budget showed administrative costs to be $23,188 for a year. The two cannot be accurately compared, though, as the figure for the Bennettsville facility includes physician compensation and the salaries of other employees, figures which are accounted for elsewhere in the Wake Kidney budget.

Appellants further contend that, in order to treat the same number of patients as set forth in the budget in a six-station facility, Wake Kidney would have to run a third shift, dramatically increasing the salary costs. This argument is based on the faulty premise that Wake Kidney is somehow bound to treat the number of patients indicated in the budget. This is not true. It is apparent from the evidence that the maximum number of patients a six-station facility can treat in a six-day work week, running two shifts, is twenty-four. The need data for the facility indicates that the facility could reach this maximum capacity in a matter of weeks. While the loss of one station does cut into the projected revenues somewhat, expenses are also reduced and the evidence establishes that the facility would be profitable even limited to six stations.

The perceived reasonableness of the budget is only one element used in evaluating the long-term financial feasibility of the project. Other factors include the need for the proposed service, the utilization projections and the availability of funds for the project. All of these factors weigh in favor of the financial feasibility of the project. When viewed in light of these other factors, the budget of the facility appears to be reasonable. The conclusion of the agency that the project is financially feasible is supported by substantial evidence in the whole record.

Medina v. Town and Country Ford

In light of our disposition of appellants' assignments of error, we need not address appellees' cross-assignments of error. We have carefully reviewed the lengthy record in this case and have considered the arguments presented by the parties. We conclude that the decision of the Department of Human Resources to grant the application of Wake Kidney Clinic, P.A., for a certificate of need to operate a six-station kidney dialysis center in Raleigh was supported by the evidence. The decision was reached in a fair, lawful and impartial manner. Therefore, that decision is hereby

Affirmed.

Chief Judge HEDRICK and Judge EAGLES concur.