PRESBYTERIAN-ORTHOPAEDIC HOSPITAL, Petitioner-Appellant v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, DIVISION OF FACILITY SERVICES, CERTIFICATE OF NEED SECTION, Respondent-Appellee, and MERCY HOSPITAL, INC., Intervenor-Respondent-Appellee, and STANLY MEMORIAL HOSPITAL, INC., Intervenor-Respondent-Appellee

No. COA94-1358

(Filed 4 June 1996)

1. **Hospitals and Medical Facilities or Institutions § 14 (NCI4th)— new construction instead of utilization of old space—genuine issue of fact—mandatory staffing criteria— denial of certificate of need not error**

In a proceeding for a certificate of need to develop rehabilitation beds, there was a genuine issue of material fact as to

whether petitioner's application demonstrated why its proposal for new construction was more cost efficient than conversion of existing underutilized space; however, petitioner's application failed to show that it satisfied the mandatory staffing criteria, and the Director of the Division of Facility Services thus did not err in concluding as a matter of law that petitioner should be denied a certificate of need.

**Am Jur 2d, Hospitals and Asylums § 4.**

**Validity and construction of statute requiring establishment of "need" as precondition to operation of hospital or other facilities for the care of sick people. 61 ALR3d 278.**

**Licensing and regulation of nursing or rest homes. 53 ALR4th 689.**

2. **Hospital and Medical Facilities or Institutions § 14 (NCI4th)— application for certificate of need downsized— award of certificate error**

The Director of the Division of Facility Services inappropriately granted summary judgment in favor of respondent Mercy Hospital where Mercy submitted an application to develop twenty additional rehabilitation beds; the application was conditionally approved by downsizing the application from twenty to ten beds; and a genuine issue of material fact existed as to the financial feasibility of the downsized project.

**Am Jur 2d, Hospitals and Asylums §. 4.**

**Validity and construction of statute requiring establishment of "need" as precondition to operation of hospital or other facilities for the care of sick people. 61 ALR3d 278.**

**Licensing and regulation of nursing or rest homes. 53 ALR4th 689.**

3. **Hospital and Medical Facilities or Institutions § 14 (NCI4th)— certificate of need—change of management companies after application filed—award improper**

The Director of the Division of Facility Services erred in granting summary judgment in favor of respondent Stanly where Stanly unlawfully amended its application by dismissing its man-

agement company, since all of the information in Stanly's application listed one particular company as Stanly's prospective management company and the project analyst relied on Stanly's representations in its application in deciding to award a certificate of need to Stanly.

**Am Jur 2d, Hospitals and Asylums § 4.**

**Validity and construction of statute requiring establishment of "need" as precondition to operation of hospital or other facilities for the care of sick people. 61 ALR3d 278.**

**Licensing and regulation of nursing or rest homes. 53 ALR4th 689.**

Appeal by petitioner from final decision entered 6 June 1994 by Director John M. Syria of the North Carolina Department of Human Resources Division of Facility Services. Heard in the Court of Appeals 13 September 1995.

The 1993 State Medical Facilities Plan identified a need for twenty rehabilitation beds in Health Service Area III, an eight county area in western North Carolina including Mecklenburg and Stanly Counties. Petitioner Presbyterian-Orthopaedic Hospital (hereinafter Presbyterian) and intervenor-respondents Mercy Hospital, Inc. (hereinafter Mercy) and Stanly Memorial Hospital, Inc. (hereinafter Stanly) applied to the Certificate of Need Section of the North Carolina Department of Human Resources (hereinafter respondent) for certificates of need to develop rehabilitation beds at their respective hospitals. Presbyterian and Mercy each submitted applications to develop twenty additional rehabilitation beds and Stanly submitted an application to develop a ten bed rehabilitation unit. Respondent denied Presbyterian's application, approved Stanly's application, and conditionally approved Mercy's application, downsizing Mercy's application from twenty beds to ten beds.

On 30 July 1993, Presbyterian filed a petition for a contested case hearing with the Office of Administrative Hearings (hereinafter OAH) challenging the denial of its application and the approval of Mercy's and Stanly's applications. The Administrative Law Judge (hereinafter ALJ) allowed Mercy's and Stanly's motions to intervene. Presbyterian subsequently moved for summary disposition, arguing that respondent materially changed Mercy's application in violation

of G.S. 150B-23 and that Stanly unlawfully amended its application after filing. Presbyterian argued that respondent exceeded its statutory authority by downsizing Mercy's project from twenty beds to ten beds because Mercy could not demonstrate that a ten bed project would conform with the review criteria set out in G.S. 131E-183. Presbyterian argued that Stanly unlawfully amended its application "by dismissing its management company, which was the cornerstone of its application, and by changing plans regarding its psychiatric bed conversion and construction."

Respondent, Mercy, and Stanly all filed motions with the OAH for partial summary judgment arguing that respondent properly denied Presbyterian's certificate of need. Respondent, Mercy, and Stanly all argued that Presbyterian's application failed to meet mandatory statutory and regulatory criteria because Presbyterian's application proposed insufficient staff for the rehabilitation unit and Presbyterian's application failed to justify the proposed new construction in light of its historical underutilization of its acute care beds.

In his recommended decision, the ALJ granted all parties' motions for summary judgment, concluding that none of the hospital applicants should receive certificates of need. The Director of the Division of Facility Services entered a final agency decision in which he adopted the ALJ's recommended decision that Presbyterian should be denied a certificate of need, but ordered that Mercy and Stanly be granted certificates of need, in effect granting summary judgment in favor of Mercy and Stanly.

Presbyterian appeals.

*Parker, Poe, Adams & Bernstein L.L.P., by Renee J. Montgomery and James C. Thornton, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Sherry L. Cornett, for respondent-appellee.*

*Petree Stockton, L.L.P., by Noah H. Huffstetler, III and Sharon L. McConnell, for intervenor-respondent-appellee Mercy Hospital, Inc.*

*Maupin Taylor Ellis & Adams, P.A., by Robert L. Wilson, Jr. and James E. Gates, for intervenor-respondent-appellee Stanly Memorial Hospital, Inc.*

EAGLES, Judge.

I.

**[1]** Our review of final agency decisions is governed by G.S. 150B-51(b). Pursuant to G.S. 150B-51(b):

[T]he court reviewing a final decision [of an administrative agency] may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

   (1)  In violation of constitutional provisions;

   (2)  In excess of the statutory authority or jurisdiction of the agency;

   (3)  Made upon unlawful procedure;

   (4)  Affected by other error of law;

   (5)  Unsupported by substantial evidence admissible under G.S.150(b)-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

   (6)  Arbitrary or capricious.

Here, Presbyterian argues that the ALJ in his recommended decision and the Director of the Division of Facility Services in his final agency decision erred in determining that Presbyterian should be denied a certificate of need. Presbyterian argues that there are genuine issues of material fact regarding: (1) the utility of Presbyterian's proposal for new construction versus conversion of underutilized existing space and (2) the adequacy of staffing proposed for Presbyterian's project. We first address the construction issue.

In its recommended decision, the ALJ found that Presbyterian's application failed to demonstrate why its proposal for new construction was more cost-efficient than conversion of existing underutilized space. At the time of Presbyterian's application, the State Medical Facilities Plan provided that "[c]onversion of underutilized hospital space to other needed purposes shall be considered to be more cost-efficient than new construction, unless shown otherwise." N.C. Admin. Code. tit. 10, r. 3R.3050(a)(2) (Jan. 1993). Based on this language, the ALJ determined that if a hospital had underutilized space,

yet it proposed new construction, the hospital was required to justify the new construction. Based on the utilization targets in place at the time of Presbyterian's application, the ALJ determined that the target occupancy rate for Presbyterian was 75% but that Presbyterian's "occupancy was no more than 18% in the 12 months preceding the review and no more than 31% since 1989." Having concluded from its statistics that Presbyterian had underutilized space, the ALJ determined that Presbyterian was required to show that its new construction was more cost-efficient than conversion of existing space and that Presbyterian had failed to justify its proposal for new construction in its application.

An application for a certificate of need for a proposed project must comply with "applicable policies and need determinations in the State Medical Facilities Plan." G.S. 131E-183(a)(1). The application also must comply with the review criteria set out in G.S. 131E-183(a). G.S. 131E-183(a)(12) provides in part that "[a]pplications involving construction shall demonstrate that the cost, design, and means of construction proposed represent the most reasonable alternative." The ALJ granted summary judgment, concluding that Presbyterian had also failed to present any evidence that would create a genuine issue of material fact as to Presbyterian's conformity with these criteria.

Summary judgment is only appropriate when no genuine issues of material fact exist. G.S. 1A-1, Rule 56(c). Here, Presbyterian presented the deposition testimony of Richard E. Salerno, Administrator and CEO of Presbyterian. Mr. Salerno testified that Presbyterian was not able to structure the rehabilitation unit within existing space without new construction because all of the space in the hospital was dedicated to other health care purposes and moving weight-bearing walls prohibited construction in existing space. Mr. Salerno also testified that the new construction would better meet patient needs. This deposition testimony creates a genuine issue of material fact as to whether Presbyterian showed that its proposal for new construction was the most reasonable alternative for developing its rehabilitation unit.

We note, however, that an application must comply with *all* review criteria. Accordingly, we must now determine whether a genuine issue of material fact exists regarding the adequacy of staffing for Presbyterian's proposed project. In its recommended decision, the ALJ found that Presbyterian's application failed to show that its pro-

posed staffing for the rehabilitation unit conformed to applicable criteria. To operate a rehabilitation facility in North Carolina and to satisfy the review criteria of G.S. 131E-183(a), including G.S. 131E-183(a)(5) and G.S. 131E-183(a)(7), Presbyterian had to show that it would dedicate sufficient staff to provide three hours of therapy per patient per day in the rehabilitation unit. The ALJ found that Presbyterian's application only showed that there would be sufficient staff to provide 1.27 hours of therapy per patient per day. Presbyterian argues that it presented a forecast of evidence which demonstrated that its proposed staff would be able to provide 3.2 hours of therapy per patient per day. However, several witnesses for Presbyterian testified conceding that Presbyterian's application did not demonstrate on its face that it could provide three hours per patient per day. Presbyterian's completed and filed application failed to show that Presbyterian intended to combine therapists from its acute care unit and the proposed rehabilitation unit to reach the required hours of therapy, in effect "pooling" resources. After careful review of the record, we agree with the ALJ and the final agency decision that Presbyterian's application fails to show that it satisfies the mandatory staffing criteria. Accordingly, we conclude that the ALJ did not err in recommending summary judgment against Presbyterian and that the Director of the Division of Facility Services did not err in the final agency decision by concluding as a matter of law that Presbyterian should be denied a certificate of need.

II.

Presbyterian argues that the Director of Facility Services erred by granting summary judgment in favor of Mercy and Stanly after the ALJ had recommended summary judgment against Mercy and Stanly. Presbyterian contends there were genuine issues of material fact regarding Mercy's and Stanly's applications and that there should have been a contested case hearing where the parties could present evidence and cross-examine witnesses regarding these genuine issues of material fact. Here, the parties merely presented a forecast of evidence through deposition testimony and affidavits.

A "contested case hearing" is a full adjudicatory hearing. *Charlotte-Mecklenburg Hosp. Authority v. N.C. Dept. of Human Resources*, 83 N.C. App. 122, 125, 349 S.E.2d 291, 292-93 (1986). During a contested case hearing, parties have "an opportunity to present arguments on issues of law and policy and . . . to present evidence on issues of fact." G.S. 150B-25(c); *Britthaven Inc. v. N.C.*

*Dept. of Human Resources*, 118 N.C. App. 379, 382, 455 S.E.2d 455, 459, *disc. review denied*, 341 N.C. 418, 461 S.E.2d 754 (1995). The parties also have an opportunity to cross-examine witnesses. G.S. 150B-25(d).

[2] We first address Presbyterian's argument as it relates to Mercy. In the ALJ's recommended decision denying Mercy's application for a certificate of need, the ALJ found that all of the information in Mercy's application was based on the financial feasibility of adding twenty beds, not ten beds. The ALJ also made a finding that Samuel H. Robinson, the project analyst for respondent who reviewed the applications of Presbyterian, Mercy, and Stanly, was:

> unsure about the adjustments that would be made in Mercy's staffing with the development of 10 beds, instead of 20 beds. The project analyst also was uncertain about the impact of the Agency decision on some of Mercy's projected expenses, and admitted that some of the assumptions that he used in attempting to determine the financial feasibility of a 10 bed Mercy proposal may have been invalid.

In contrast, in the final agency decision, the Director of the Division of Facility Services found that respondent "reasonably and properly determined that the 39 bed unit which would result from the Agency's conditional approval of Mercy's application . . . would be financially feasible."

Before issuing a certificate of need to an applicant, the Department of Human Resources must determine that the application is consistent with criteria set out in G.S. 131E-183, including the financial feasibility of the project. G.S. 131E-183(a)(5). From our review of the record before us here, it is clear that the parties forecast evidence to support both the ALJ's recommended decision and the final agency decision on the issue of the financial feasibility of the Mercy application. On this record, we conclude that there is a genuine issue of material fact as to whether respondent's grant of a certificate of need for ten beds to Mercy instead of the twenty beds originally applied for is financially feasible. Because we have determined that a genuine issue of material fact exists as to the financial feasibility of Mercy's project, we hold that the final agency inappropriately granted summary judgment in favor of Mercy. This case must be remanded for a contested case hearing regarding Mercy's application.

**[3]**  Presbyterian next argues that the Director of Facility Services erred in granting summary judgment in favor of Stanly. Presbyterian argues that after Stanly's application was complete and while the review of the competing applications was in progress, Stanly began discussions with a different management company, the Charlotte Institute of Rehabilitation, (hereinafter CIR) for CIR to become its management company and that Stanly subsequently informed Milestone that Milestone would not be the managing company for the rehabilitation unit. Presbyterian contends that Stanly's actions constituted an impermissible material amendment of its application because all of the information in Stanly's application listed Milestone as Stanly's prospective management company and the project analyst relied on Stanly's representations in its application in deciding to award a certificate of need to Stanly. We agree.

An applicant may not amend an application for a certificate of need once the application is deemed complete. N.C. Admin. Code tit. 10, r. 3R.0306 (Dec. 1994); *In re Application of Wake Kidney Clinic,* 85 N.C. App. 639, 643, 355 S.E.2d 788, 790-91, *disc. review denied,* 320 N.C. 793, 361 S.E.2d 89 (1987). Here, all of Stanly's logistical and financial data in its completed certificate of need application was based on having Milestone as Stanly's management company. Yet, the record contains a letter dated 14 July 1993 from the president of Milestone expressing his disappointment in Milestone not being chosen by Stanly as its management company for the ten bed rehabilitation project. John Sullivan, Stanly's President and Chief Operating Officer, testified that he telephoned Milestone's president before 14 July 1993 and told him that Stanly would probably be working with a management company closer to Stanly "if and when [Stanly was] allowed to develop the beds." We conclude that the combination of the 14 July 1993 letter and Mr. Sullivan's telephone conversation with Milestone's president that occurred prior to the 14 July 1993 letter, taken in context, is sufficient evidence to show that Stanly had decided not to use Milestone as its management company before Stanly's certificate of need application was approved and that Stanly's actions constituted a material amendment to its application.

The final agency decision concluded that Stanly could present data to the Agency if Stanly decided to change management companies. We disagree. Stanly cannot be awarded a certificate of need contingent on CIR's management proposal data conforming to Milestone's data because in a certificate of need case, the hearing officer may only consider the evidence contained in an applicant's cer-

tificate of need application which was before the Certificate of Need Section when it made its initial decision. *In re Application of Wake Kidney Clinic*, 85 N.C. App. at 643, 355 S.E.2d at 791. The ALJ properly came to this conclusion in its recommended decision. Accordingly, we conclude that the Director of Facility Services erred in its final agency decision by concluding that Stanly should be granted a certificate of need.

In summary, this case is remanded to respondent for remand to the OAH for an ALJ to conduct a contested case hearing regarding Mercy's certificate of need application. We reverse the portion of the final agency decision that awarded Stanly a certificate of need because Stanly materially changed its application after its application was completed in violation of the North Carolina Administrative Code, N.C. Admin. Code tit. 10, r. 3R.0306 (Dec. 1994). We affirm the portion of the final agency decision that denied Presbyterian a certificate of need because Presbyterian failed to meet mandatory staffing criteria in its certificate of need application.

Reversed and remanded in part; affirmed in part.

Judges LEWIS and JOHN concur.